David P Demarest (pro se)
P.O. Box 191
Underhill Center, VT 05490
(802)363-9962
david@vermontmushrooms.com

Pro Se Plaintiff DAVID P DEMAREST

**FILED**

MAR 0 9 2017

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
          DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT COURT OF CALIFORNIA

| | |
|---|---|
| DAVID P DEMAREST, an individual<br><br>PLAINTIFF<br><br>VS.<br><br>THE CITY OF VALLEJO,<br>a municipality and charter city;<br>POLICE OFFICER JODI BROWN,<br>as an individual and in official capacity;<br>POLICE OFFICER JEFF TAI,<br>as an individual and in official capacity;<br>POLICE OFFICER HERMAN ROBINSON,<br>as an individual and in official capacity;<br>VALLEJO POLICE OFFICER DOE 1,<br>as an individual and in official capacity;<br>VALLEJO POLICE OFFICER DOE 2,<br>as an individual and in official capacity<br><br>DEFENDANTS | CASE NO. 2:16-CV-02271-GEB-KJN<br><br><br>**First Amended Complaint**<br>**For Violations of Civil Rights**<br>**(Non-prisoner complaint)**<br><br>**(42 U.S.C. § 1983)**<br><br>**Jury Trial Demanded** |

### First Amended Complaint - Nature of Case

    Plaintiff brings instant action for damages and injunctive relief arising from deprivation of David P Demarest's 4th Amendment civil rights caused by unlawful arrest, wrongful imprisonment, excessive use of force (which included the unprovoked threat of potentially lethal force), and the 14th Amendment rights violations of due process caused by officers withholding of exculpatory evidence, and a Vallejo Police Department culture of officers regularly violating due process rights of citizens by violating their 4th Amendment rights to a degree that amounts to "policing for profit" by arresting citizens and impounding vehicles without cause in violation of 4th and 14th amendment rights.

    Plaintiff was deprived of civil rights by defendants subsequent to encountering a Vallejo Police Department "Driver's License Checkpoint" located at Sonoma Blvd and Solano Avenue on September 26, 2014; defendants arrested plaintiff for 40302(A) in response to the polite request by plaintiff to continue on his way without further delay since there was a complete absence of an articulated reason to suspect any criminality or even the most minor traffic violation having occurred.

## JURISDICTION

1. This action arises under 42 U.S.C. §1983. Jurisdiction is placed upon this court by 28 U.S.C. § 1331.

## VENUE

2. Venue is appropriate in this Court under 28 U.S.C. §1391(b)2 as all unlawful acts, omissions, and practices occurred in the City of Vallejo, Solano County, California which is within this judicial district.

## PARTIES

3. PLAINTIFF DAVID P. DEMAREST at the time of the events giving rise to this complaint was a resident of Underhill, Vermont with a sailboat temporarily docked at the Vallejo Municipal Marina after an unexpected serious back medical condition had debilitated him for months; David P. Demarest had only recently regained the ability to walk short distances despite considerable pain and muscle weakness when the events alleged in this complaint occurred.

4. DEFENDANT CITY OF VALLEJO ("Vallejo") is, and at all times alleged herein was, a municipal entity and charter city duly organized and existing under the laws of the State of California.

7. DEFENDANT JODI BROWN was a Police officer, Badge Number 637, employed by the Vallejo Police Department and acting under the authority of the City of Vallejo and under color of law when she arrested plaintiff for the charge of 40302(A) and is sued in her individual and official capacity.

8. DEFENDANT JEFF TAI, was a Police officer, Badge Number 599, employed by the Vallejo Police Department and acting under the authority of the City of Vallejo and under color of law when Officer Brown arrested plaintiff for the charge of 40302(A) and is sued in his individual and official capacity.

9. DEFENDANT OFFICER HERMAN ROBINSON, Police officer, Badge Number 331, employed by the Vallejo Police Department and acting under the authority of the City of Vallejo and under color of law in a supervisory role when he approved the transport of Plaintiff subsequent to Officer Brown's decision to arrest plaintiff for the charge of 40302(A) and is sued in his individual and official capacity.

9. DEFENDANT VALLEJO POLICE OFFICER DOE 1 was a Police officer employed by the Vallejo Police Department and acting under the authority of the City of Vallejo and under color of law based on Plaintiff's information and belief when Officer Brown arrested plaintiff for the charge of 40302(A) and is sued in his individual and official capacity under a fictitious name since plaintiffs are ignorant of their true name at the time. Plaintiff will amend this complaint with true name of Doe 1 once discovery process allows their true name to be known to plaintiff.

10. DEFENDANT VALLEJO POLICE OFFICER DOE 2 was a Police officer employed by the Vallejo Police Department and acting under the authority of the City of Vallejo and under color of law based on Plaintiff's information and belief when Officer Brown arrested plaintiff for the charge of 40302(A) and is sued in his individual and official capacity under a fictitious name since plaintiffs are ignorant of their true name at the time. Plaintiff will amend this complaint with true name of Doe 1 once discovery process allows their true name to be known to plaintiff.

## GENERAL ALLEGATIONS AND SURROUNDING SITUATION
(further elaborated under each interconnected cause of action)

11: Plaintiff was driving from his sailboat which was temporarily docked at the Vallejo Municipal Marina to a friend's boat in the East Bay when he encountered a "DUI / Driver's License Checkpoint" blocking his travel operated by Vallejo Police Officers acting under color of law.

12: There was no safe and legal manner by which plaintiff could safely avoid driving through the checkpoint after first seeing signage for a "DUI/Driver's License Checkpoint."

13: Plaintiff has information and reasonable belief Officer Jodi Brown and fellow officers regularly violated the 4th Amendment rights of citizens at "Driver's License Checkpoints" in furtherance of an unconstitutional policy of "policing for profit" by using checkpoints as a tool for revenue generation for the City of Vallejo and to generate substantial overtime income at checkpoints used as a general investigatory tool devoid of any articulable reasonable suspicions of vehicular violations or criminality of any kind prior to demanding all vehicles and their occupants to be detained and/or arrested with little (if any…) true concern for general public safety needs or no ability to actually articulate to citizens the legal justification for their detention or arrest.

14: Plaintiff has information and belief Vallejo Police Officers regularly detain, search, arrest, impound vehicles, confiscate property, and use excessive use of force in manner which violates suspects 4th amendment rights violation of their sworn duty to "protect and serve".

15: As a matter of law, the charge of 40302(A) cannot be an arrestable offense since it requires an individual to be an arrestee, and once suspects ID had been obtained every minor misdemeanor could and should have been handled in a cite and release manner.

16: Neither the arresting charge of 40302(A) or the subsequent additional charge of 148(a)1 justified plaintiff being taken down to the police station since his identity had been confirmed shortly after Officer Jodi Brown violated plaintiff's 4th Amendment rights by placing him under arrest for 40302(A) and even if it had been reasonable to charge plaintiff with 148(a)1 it should have been handled in a cite and release manner.

17: Plaintiff has information and belief that Officer Jodi Brown willfully chooses to use more force than is reasonable or necessary to affect unlawful detentions and arrests including plaintiff having credible information and reasonable belief Officer Jodi Brown willfully puts handcuffs on plaintiff and other citizens she chooses to arrest tighter than necessary.

18: There is strong financial incentives which further support the reasonable belief and strong suspicion The Vallejo Police Department is conducting "DUI/Driver's License Checkpoints" as an investigatory tool with the primary purpose being for revenue generation in defiance citizens' the 4th Amendment rights without any true educational mission and a dubious public safety mission.

18: Plaintiff has information and reasonable belief the decision to tow plaintiff vehicle from the scene was a revenue generating tool for the Vallejo Police Department despite Plaintiff's request to leave the vehicle parked near the checkpoint, which cost plaintiff $1,045 to have eventually be returned after 4 days of loss of use of car.

19: Plaintiff was denied 4th amendment right when arrested for a non-arrestable offense with a use of excessive force given the surrounding circumstances.

20: Plaintiff was denied 14th amendment rights to the due process when through their actions and inactions officers within the Vallejo Police Department

   A) Failed to properly supervise, or be a good supporting law enforcement officer to, Officer Jodi Brown by allowing the furtherance of an unlawful arrest to result in a citizen's night in jail as opposed to either a brief detention or giving at most a cite and release infraction

   B) Officer Jodi Brown and fellow defendants denied plaintiff's due process rights by impounding plaintiff's rental car despite plaintiff requesting it not be impounded and the vehicle not posing a threat to public safety or impediment to vehicular traffic in any ways not a direct and proximate result of the defendant officers actions; it cost plaintiff over $1000 and 4 days of lack of use of rental car to retrieve rental car and yet the unfounded charges of 40302(A) and 148(a)1 carried a maximum financial penalty *if convicted and the maximum fine were to be imposed* of only $1000.

   C) Denied Plaintiff the right to exculpatory evidence in two vital due process roles:
      1) to have exculpatory evidence provided to the DA in order that he or she can determine whether or not to arraign an arrestee
      2) in the course of discovery proceedings of the criminal proceedings filed against plaintiff.

   21: Subsequent to unlawful arrest, Plaintiff was subjected to dehumanizing prisoner transport in the back of a prisoner transport vehicle while handcuffed too tightly and with no head room which caused extensive additional pain to plaintiff's serious prior back injury and further emotional distress entirely unnecessary for the circumstances.

   22: Subsequent to plaintiff's unlawful arrest, plaintiff was held in jail for ~22 hours prior to being able to post bail and was denied use of his rental vehicle for four days (with costs to get vehicle out of police impound costing more than the maximum financial liability the charges he had been transported to the Vallejo Police Station on would have cost *if all charges had not been dismissed and the absolute maximum fine imposed*).

## FIRST CAUSE OF ACTION
### Claims of Officer Jodi Brown's Violation of Plaintiff's Fourth Amendment Rights
### (42 U.S.C. §1983)

   23: Officer Jodi Brown acting under color of law wanted to see Plaintiff's Driver's License and Plaintiff politely requested to continue on his way without unnecessary delay unless there was probable cause to believe he committed a traffic violation or crime.

   24: While acting under color of law, Officer Jodi Brown did not articulate any probable cause, reasonable suspicion, or even a vague possibility that Plaintiff had committed any traffic violation or crime of any kind.

   25: Officer Jodi Brown never notified Plaintiff he was being detained, let alone a reason to justify detaining him or requiring his Driver's License while she was acting under color of law.

   26: Plaintiff verbally confirmed to Officer Jodi Brown that he possessed a valid driver's license; due to Plaintiff's serious back condition simply getting his Driver's License out of his pocket while seated in a car would greatly exasperate the pain he was already in.

   27: Plaintiff simply asked Officer Jodi Brown questions and verbally expressed a desire to continue on his way, which is not a violation of 148(a)(1), prior to Officer Jodi Brown placing plaintiff under arrest for 40302(A) CVC.

   28: Officer Jodi Brown's police report does not mention a single violation or suspicion of violation prior to arresting Plaintiff for 40302(A).

   29: Officer Jodi Brown violated Plaintiff's Fourth Amendment rights in never notifying Plaintiff of a lawful reason he was being detained or articulating a reasonable suspicion or probable cause that Plaintiff had committed any offense necessitating detention or arrest prior to Officer Jodi Brown arresting Plaintiff for 40302(A) CVC.

   30: The manner in which Officer Jodi Brown pulled Plaintiff from the vehicle he had been driving caused extensive pain to a pre-existing back injury and was unnecessary and unreasonable use of force for the circumstances.

   31: Officer Jodi Brown made a false claim in her police report stating, "during the struggle, I sustained a small abrasion to my right ring finger" and may have made a false claim in denying the existence of any audio or video evidence.

   32: Officer Jodi Brown's falsely claiming she suffered a "small abrasion" was a very small self-inflicted cut which occurred while Plaintiff was already handcuffed in the back of Officer Tai's car.

33: Officer Jodi Brown verbally threatened to charge Plaintiff with assaulting a police officer simply as an additional measure of terrorizing plaintiff despite the fact he was physically compliant and actually handcuffed in the back of a police car at the time of Officer Jodi Brown's threat.

34: Plaintiff was never arraigned on the illogically circular arresting charge of 40302(A) detailed in Officer Jodi Brown's police report and all criminal charges against the plaintiff were eventually dismissed.

35: As a matter of law 40302(A) CVC clearly requires a preceding justification for arrest since it clearly states, "whenever any person is arrested for any violation of this code, not declared to be a felony, the arrested person shall be taken without any unnecessary delay..."

36: Plaintiff's Fourth Amendment rights where violated when Officer Jodi Brown, acting under color of law, as her own police report confirms, chose to arrest plaintiff for the initial charge of 40302(A) CVC.

37: Plaintiff has information and belief Officer Jodi Brown unlawfully arrested plaintiff for 40302(A) CVC in the furtherance of the goal of revenue generation as opposed to public safety and caused tremendous harm to plaintiff's recovery from a preexisting back condition, personal finances, good name and reputation, emotional wellbeing and feeling of safety, ability to travel internationally, caused his DNA to be entered into a felony database of suspected and actual criminals without due process of law, and instilled a strong fear of police in California.

38: Plaintiff has information and belief Officer Jodi Brown abused the tremendous latitude given to a police officer's discretion with a lack of professionalism and malicious desire to retaliate against plaintiff for questioning her completely unbridled arrest capabilities irrespective of there being a complete lack of actual justification to conduct a lawful arrest by charging plaintiff with 148(A)(1) for merely requesting his 4th amendment rights be respected and asking to continue on his way without unnecessary delay..

39: Officer Jodi Brown and Officer Jeff Tai were fully aware Plaintiff possessed a valid Vermont Driver's License with no warrants and had no legal cause to further detain and/or arrest plaintiff when the decision was made to bring Plaintiff back to the station on unfounded charges.

40: Plaintiff has information and belief Plaintiff being brought down to the station for two misdemeanor charges should normally have been handled in a "cite and release" manner and was retaliatory on the part of Officer Jodi Brown purely because the plaintiff expressed a verbal desire that his constitutional rights be respected.

41: Officers impounded plaintiff's rental vehicle against plaintiff's will and against the findings of Mirada v City of Cornelius which recognized 4th and 14th Amendment rights are violated when important factors in the impounding of an individual's vehicle.

42: Plaintiff allege Defendants named in the suit committed allegations contained in this First Amended Complaint in a manner which would inherently cause a grievous violation of the Plaintiff's Fourth Amendment Right to be free from unreasonable searches and seizures by arresting plaintiff for 40302(A) CVC without any articulable reason to suspect plaintiff had committed any vehicle code violation or criminality of any kind.

### SECOND CAUSE OF ACTION
**Claims of Officer Jodi Brown's Violation of Plaintiff's Fourteenth Amendment Rights**
**(42 U.S.C. §1983)**

43: Officer Jodi Brown claimed there was no video or audio evidence available surrounding her arrest of plaintiff for 40302(A) despite a prevalence of officers with body cameras, including herself, and multiple police cars capable of recording video and audio of the events surrounding arrest.

44: Officer Jodi Brown's actions or deliberate inactions denied plaintiff access to significant exculpatory evidence by one of two means: either the premeditated decision to avoid recording an unlawful arrest she intended to make using excessive force, or by ex post facto denying and/or destroying the presence of any exculpatory audio or video recordings of the arrest.

45: In the criminal defense discovery request no video or audio evidence was made available in the discovery process; were said video or audio available (or disclosed to the plaintiff at this time..) there would simultaneously be highly significant proof the plaintiff was factually innocent and the Vallejo Police Department should be able to acknowledge a mistake was made enabling the clearing of plaintiff's arrest record. It is simultaneously noteworthy that this evidence would likewise provide a preponderance of evidence against all named defendants in the current case before this court.

46: The 3" general utility knife Plaintiff possessed for multiple good and lawful uses was not discovered by Officer Jodi Brown until Plaintiff had already been brought to the police station without a legally valid reason. Plaintiff even verbally emphasized to Officer Jodi Brown that his general utility knife was for use as a tool, but Officer Jodi Brown chose to fit it within California's overly broad definition of a "dirk or dagger" (which in stark contrast to Webster's dictionary encompasses innocuous objects including utility knives, screw drivers, and even potentially a ballpoint pen if a law enforcement officer so felt inclined).

47: Plaintiff has information and belief Officer Jodi Brown demonstrated malicious and deliberate abuse of the tremendous latitude given to a police officer's discretion and the fact there is full latitude for charging possession of a 3" general utility knife as either a misdemeanor or felony that:

 A) Officer Jodi Brown maliciously retaliated against plaintiff's exercise of his 1st Amendment rights when he verbally requesting his 4th Amendment rights be respected both in her decision to arrest plaintiff for 40302(a) and when she charged plaintiff for felony "possession of a concealed dirk or dagger" under 21310 PC;

 B) Plaintiff has information and belief 21310 PC was found to be unconstitutionally overbroad in People v Oskins (1999) because it criminalizes possession of normally useful and productive items used day to day in society without requiring any *mens rea* as an element of the crime it unconstitutionally and nonsensically criminalizes wholly innocent conduct.

 C) Regardless of the constitutionally questionable nature of 21310 PC, there is tremendous latitude within that stature to charge it as either a misdemeanor or felony;

  1) A reasonable and prudent Police Officer would not consider the mere possession of a 3" general utility knife by a non-violent citizen without a criminal record, the slightest hint of any *mens rea,* and absolutely no surrounding evidence to justify the mere possession of a general utility knife intended for lawful use as a tool by a sailor traveling between his boat and a friend's boat to be appear in their arrest report as the felony possession of a "concealed dirk or dagger" or claim a "weapon being used" in a "Prop 115 qualified crime" which would result extreme fear for how this charge would impact plaintiff's entire life ranging from excessive bail being required (relative to the innocuous conduct of carrying a general utility knife as a tool), ineligibility for a Transportation Workers Identity Card (TWIC) in the furtherance of plaintiff's goal of obtaining a USCG Captain's License, future difficulty traveling to other countries even after charges were eventually dismissed, and the involuntary taking of his DNA without a search warrant, and many other impacts.

  2) Plaintiff was never arraigned for any felony charge given the surrounding circumstances of which the DA was aware, if the Vallejo Police Department had not withheld exculpatory evidence there would have been no need to arraign Plaintiff on any charges, other than perhaps as a way to cover up officer misconduct and the initial unlawful arrest.

### THIRD CAUSE OF ACTION
### Claims of Officer Jeff Tai's Violation of Plaintiff's Fourth Amendment Rights
### (42 U.S.C. §1983)

48: Officer Jodi Brown and Officer Jeff Tai were fully aware Plaintiff possessed a valid Vermont Driver's License with no warrants after running plaintiff's Driver's License through the laptop in Officer Tai's police car.

49: Plaintiff allege Officer Jeff Tai aided and abetted the unlawful arrest of the plaintiff for 40302(A) CVC with full knowledge that suspect had not committed any legitimate vehicle code violation or criminality of any kind which would justify his transportation of plaintiff to the Vallejo Police Station.

50: Plaintiff allege Officer Jeff Tai aided and abetted the unlawful arrest of the plaintiff by transporting plaintiff back to the station for 40302(A) CVC with full knowledge that if plaintiff was guilty indeed guilty of 40302(A) or 148a1 both charges should have been handled in a cite and release manner since plaintiff's identity was known to Officer Jeff Tai at time of transport to the station.

51: A reasonable and prudent Law Enforcement Officer in Jeff Tai's position would realize knowingly furthering this unlawful arrest by transporting plaintiff back to the Vallejo Police Station would inherently cause a grievous violation of the Plaintiff's Fourth Amendment Right to be free from unreasonable searches and seizures.

### FOURTH CAUSE OF ACTION
### Claims of Officer Jeff Tai's Violation of Plaintiff's Fourteenth Amendment Rights
### (42 U.S.C. §1983)

52: Jeff Tai's decision to not stand up for the rights of a citizen he knew was unlawfully arrested violated plaintiff's rights to due process since he had considerable influence in the ability of the proceeding unlawful arrest to be handled as either a brief detention with plaintiff being allowed to continue on his way, or in a cite and release manner, both of which would have significantly reduced the impact of Officer Jodi Brown's initial decision to unlawfully arrest plaintiff was a violation of plaintiff's 14th amendment rights to due process since all officers knowing an unlawful arrest has occurred have a legal duty to prevent the further violation of a citizen's civil rights.

53: Jeff Tai's involvement in the impounding of plaintiff's lawfully operated vehicle outlined in claim 41 above.

### FIFTH CAUSE OF ACTION
### Claims of Officer Herman Robinson's Violation of Plaintiff's Fourth Amendment Rights
### (42 U.S.C. §1983)

54: Officer Herman Robinson was present and fully aware that Plaintiff had a valid Vermont driver's license, no warrants out for his arrest, and had been subject to an unlawful detention or arrest at the hands of Officer Jodi Brown when he authorized Plaintiff be transported back to the Vallejo Police Station on the arresting charges of 40302(A) despite officers under his authority already having possession of plaintiff's valid Driver's License.

55: Officer Robinson may have either suggested adding the additional charge of 148a1,or at the very least aided and abetted Officer Jodi Brown's unlawful arrest for 40302(A) by approving that additional charge despite being fully aware of the unlawful nature of Jodi Brown's choice to arrest plaintiff, as a way to cover up the unlawful arrest and excessive use of force against plaintiff prior to approving transportation of plaintiff to the Vallejo Police Department for booking with complete

indifference to plaintiff's civil rights.

## SIXTH CAUSE OF ACTION
### Claims of Officer Herman Robinson's Violation of Plaintiff's Fourteenth Amendment Rights
### (42 U.S.C. §1983)

56: Upon arrest and after being positively identified, plaintiff asked to speak to a supervisor and Officer Lieutenant Herman Robinson briefly spoke with him in a mocking manner when Plaintiff for pointing out that he "was simply exercising his 4th amendment rights and did nothing wrong."

57: Officer Robinson mocked plaintiff during a brief conversation at the DUI/Driver's License Checkpoint after plaintiff had been unlawfully arrested but prior to transportation of plaintiff back to the Vallejo Police Station while plaintiff was handcuffed and in the back of Officer Tai's vehicle.

58: Officer Robinson knew Plaintiff was unlawfully arrested based on information provided by both Officer Brown and Plaintiff. Plaintiff pointed out that he was merely exercising his Fourth Amendment rights, and indeed Officer Brown's own report confirms that Plaintiff was arrested for a non-arrestable offense.

59: Officer Robinson's personal involvement and method of supervision of officers at the DUI/Driver's License Checkpoint at which plaintiff had been stopped and arrested by Officer Brown's should have prevented a relatively brief unlawful detention and excessive use of force situation by subordinate officers from spiraling into unlawful arrest resulting in an ~22 hour painful ordeal in jail, expense of posting bail, car impound fees, necessity to retain a lawyer for representation against an impending criminal case, and many of the other impacts suffered subsequent to Officer Jodi Brown's unlawfully arresting plaintiff.

60: Officer Robinson's complete dereliction of duty to supervise officer's under his authority in effect gave all officers under his "supervision" unbridled individual officer discretion to violate citizen's rights by simply adding a charge of 148a1 to justify any preceding officer misconduct.

61: Plaintiff has information and belief Officer Lieutenant Herman Robinson's focus on revenue generation surpassed his interest in public safety and created the complete dereliction of duty to supervise officers at the September 26, 2014 checkpoint on Sonoma Blvd and Solano Avenue which allowed tremendous abuses in officer arrest powers to occur.

62: Officer Robinson violated plaintiff's 14th amendment rights to due process when he made the decision to not stand up for the rights of a citizen he knew had been unlawfully arrested given his supervisory role at the DUI checkpoint, knowledge of the unlawful nature of Jodi Brown's initial arrest, knowledge plaintiff had a valid driver's license with no warrants, and should have known of the unlawful nature of impounding plaintiff's vehicle as outlined in claim 41.

63: Officer Robinson's dereliction of duties enabled Officer Jodi Brown's initial decision to unlawfully arrest plaintiff with excessive use of force to expand into plaintiff spending ~22 hours in jail and the vast majority of other impacts Brown's unlawful arrest created if only Officer Robinson chose to have the preceding unlawful arrest handled as either a brief detention or in a cite and release manner subsequent to plaintiff being handcuffed in the back of Officer Tai's car but prior to transport back to the Vallejo Police Station for processing.

## SEVENTH AND EIGTH CAUSES OF ACTION
### Claims of Officer Doe 1 and Doe 2 Violation of Plaintiff's Fourth Amendment Rights
### (42 U.S.C. §1983)

64: There was no reasonable justification for Officer Doe 1 and Doe 2 choice to point Taser guns at Plaintiff while aiding and abetting Officer Jodi Brown's unlawful arrest of plaintiff with an unreasonable and entirely unnecessary use of potentially lethal force in the absence of any reasonable

belief of a threat being presented at the time of Officer Jodi Brown's unlawful arrest of plaintiff.

65: There is information and belief that the threat of a Taser in the hands of VPD officers is a very real and deadly threat of death or serious bodily injury is even supported by the local history that the Vallejo Police Department itself killed Andrew Washington after VPD used a Taser shocking him 17 times in three minutes, Michael White died subsequent Tasers being used by VPD, and there is credible evidence the VPD has used Tasers on a 14 year old boy under questionable circumstances.

66: The officer (Doe 2) which unnecessarily threatened use of excessive and potentially lethal force by pointing a Taser gun at Plaintiff from the passenger side of the car also antagonized plaintiff and was verbally combative by expressing a desire for an excuse to use his weapon in clear violation of generally accepted officer training and in a manner intended to escalate as opposed to deescalate what should have been a civilized (albeit unlawful) arrest procedure.

## NINTH CAUSE OF ACTION
### Monell Claim Against City Of Vallejo For Violation Of Fourth Amendment Rights)
### (42 U.S.C. §1983)

67: Plaintiff has information and belief the acts and omissions characteristic of Police Officers employed by the City of Vallejo is a clear custom, policy and/or repeated practice of poor policing and condoning and even outright encouraging militant policing activities with clear disregard and complete indifference to the constitutionally protected rights of citizens including Plaintiff's First, Fourth, and Fourteenth Amendment Rights:

68: There is credible evidence the choice of Officers Brown, Tai, and Robinson, and Officer Does 1 and 2 conspiracy to knowingly detain and/or arrest plaintiff in violation of his Fourth Amendment Rights and him transport back to the station is not an isolated or rare occasion of Vallejo police officers acting under color of law to regularly deprive citizens of constitutional rights including the their 1st, 4th, and 14th amendment rights while both acting as individual officers and conspiring among fellow officers.

69: The above claims and causes of action perpetuated by Vallejo Police Officers combined with below credible evidence and historical reporting of civil rights violations by the Vallejo Police Department is indicative of policies and by the City of Vallejo and its representatives that demonstrate the unfortunate regularity which citizen's rights, including 4th and 14th amendment rights have been and are violated by the Vallejo Police Department.

70: Defendants have acknowledged, "local governing bodies can be sued directly under Section 1983 only where the alleged unconstitutional conduct is the result of an official policy, pattern or practice;" there is credible evidence to conclude Demarest's civil rights being violated are a part of a historical pattern and practice of hiring and continuing to employ officers in Vallejo which are unconcerned with the civil rights of the citizens they are entrusted to protect based on the disproportionately large number of civil rights complaints, officer involved shootings, media attention of VPD officer misconduct, and general community fear of the police in Vallejo.

71: The City of Vallejo also has a clear official policy, pattern AND practice of conducting "Driver's License Checkpoints" as opposed to merely "DUI checkpoints." The City of Vallejo's own website and signage confirms the Vallejo Police Department operates checkpoints that demand Driver's Licenses without any reasonable suspicion of a violation or crime having occurred which has absolutely nothing to do with preventing the dangers of Driving Under the Influence, "This DUI/Drivers License checkpoint is an effort to reduce those tragedies, as well as ensuring drivers have a valid driver's license." (http://www.ci.vallejo.ca.us/common/pages/DisplayFile.aspx?itemId=31031).

72: Municipal policymakers knew and approved of their subordinates demanding identification

from drivers at checkpoints without any reasonable suspicion of any violations having occurred.

73: Policies and practices indicative of using DUI/Driver's License checkpoints as a source of revenue generation for the City of Vallejo and blanket investigatory tool far exceed the permissible use of DUI checkpoints when the governmental interest in discouraging drunken driving (which is a severe problem with potentially fatal consequences the government has compelling desire to eradicate) is weighed against the 4th Amendment rights of motorists *briefly* stopped at sobriety checkpoints since a brief conversation with a law enforcement officer is considered to be less of an imposition that the significant impact DUIs have on society.

74: The arguments and subsequent balancing of interests the courts have accepted for *brief* DUI checkpoints is vastly different from justifying that warrant-less searches of every passing motorist's driver's license information in the absence of any reasonable suspicion that even the most minor traffic violation may have actually been committed by a motorist.

75: The Vallejo Police Department policy of extending the scope of "sobriety checkpoints" far beyond the National Highway Traffic Safety Administration goals and guidelines related to the strong governmental interest of discouraging driving while intoxicated entirely changes the constitutional balancing act the Courts have weighed in support of various compelling state interests relative to their intrusion upon individual 4th Amendment rights.

76: Demanding Drivers' Licenses from all drivers without any articulable reasonable suspicion or infraction having occurred has nothing in common with the intrusion of a checkpoint aimed at security along our nations borders or decreasing the number of lives lost from drug and alcohol impaired drivers with educational programs involving a very *brief* conversation with a law enforcement officer looking for signs of intoxication.

77: Plaintiff has information and belief the existing technology of license plate scanners, as well as simply calling in a license plate of a suspicious vehicle, reduces the claimed benefits of Driver's License checkpoints to a level far below the impact on demanding every driver going through a checkpoint provide their ID without any reasonable suspicion of any wrongdoing.

78: Driver's license checkpoints disproportionately put legal drivers with physical, mental, and speech disabilities at increased risk of unlawful arrest, serious injury, and potentially even death by Law Enforcement Officers.

79: The seemingly simple act of reaching into one's own pocket while sitting in a car would have been physically difficult and painful for plaintiff at the time Officer Jodi Brown arrested him for 40302(A) due to their pre-existing back condition which he had only recently been able recover to the point of walking with considerable pain and difficulty; in the case of the Vallejo Police Department it may even get a citizen Tasered or worse.

80: Plaintiff has information and belief The City of Vallejo's failure to appropriately select and subsequently train Vallejo Police Officers as is indicated by Officer Jodi Brown filling out an arrest report under penalty of perjury with multiple errors including an incorrect arrestee age, incorrect arrestee hair color, false claim of a "weapon being used" in a "Prop 115 qualified" crime, incorrectly denying Plaintiff had any complaints or evidence of illness or injury, and listing of charges opposite the order in which they could have logically occurred increased the likelihood of Officer Brown violating citizen's 4th amendment rights to the point of almost certainty.

81: At the time of the events surrounding this litigation, Plaintiff has information and belief Vallejo City Council Members and Police Chief Joseph Kreins failed to adequately train, supervise and discipline police officers, including Officer Jodi Brown, Officer Jeff Tai, Herman Robinson, and Officer Doe 2, which created a pattern of officers violating citizens civil rights with impunity, using levels of force far exceeding generally accepted law enforcement training protocols, and having a

feeling of unrestrained power to dish out any amount of "street justice" they felt like if anyone dared question their authority.

82: Plaintiff has information and belief City of Vallejo and Former Police Chief Joseph Kreins failed in taking appropriate responsibility to adequately train, supervise, and discipline Vallejo Police Officers in appropriate law enforcement practices which are respectful of individual civil liberties including encouraging seizures ranging from unlawful searches and arrests, excessive force in the furtherance of unlawful and otherwise lawful arrests, and the impounding of vehicles without cause other than the profitable nature of policing for profit.

83: Plaintiff has information and belief that Police Chief Joseph Kreins and members of the Vallejo City Council in their official capacity have an ongoing history of employing law enforcement officers with disciplinary problems and mental health issues which are vastly more predisposed to violating individual civil liberties and using excessive force, including the threat of and actual use of lethal and potentially lethal force, than their colleagues in other cities and towns.

## CREDIBLE EVIDENCE OF CLAIMS AGAINST THE CITY OF VALLEJO AS A PATTERN AND/OR PRACTICE OF THE CITY OF VALLEJO INCLUDES (BUT FAR FROM LIMITED TO...)

84: Quoting **Cathey v. City of Vallejo**, "Plaintiff alleges that on April 3, 2014, at approximately 4:00 p.m., he was visiting his friend (name redacted) at her home in Vallejo. Later on, as plaintiff was leaving, several Vallejo Police Department vehicles arrived. One of the officers on the scene was defendant Officer Jodi Brown, who ordered plaintiff to stop. Plaintiff complied with Officer Brown's order, and was subsequently placed in tight handcuffs. Plaintiff asked Officer Brown to loosen his handcuffs, but she ignored him. Officer Brown then searched plaintiff's pockets and found $788, which she confiscated. Officer Brown forced plaintiff into a police vehicle and transported him to the Vallejo Police Department, where he was left in tight handcuffs for approximately an hour. Plaintiff asked Officer Brown to loosen his handcuffs several times, but she refused. As a result of Officer Brown's treatment of plaintiff, he suffered pain and numbness for approximately three weeks. Plaintiff was released, perhaps after an hour but he does not specify, and given a citation for violation of California Health and Safety Code § 11532(a)

**Plaintiff claims that Officer Brown violated his Fourth Amendment right to freedom from unreasonable searches and seizures because she did not have probable cause to either arrest or search him.**

**Plaintiff also claims that by keeping him in tight handcuffs Officer Brown used excessive force in violation of the Fourth Amendment.**

**Finally, plaintiff claims that the Vallejo Police Department violated his Fourth Amendment rights under Monell because it has a policy, practice, or custom, of allowing excessive force."**

85: **The Vallejo Police Department has a clear pattern and policy of conducting "driver's license checkpoints," unlawful detentions, unlawful arrests, false imprisonments, and profitable vehicle impounds in complete disregard for citizen rights.** Plaintiff to case currently before the Court also being arrested without reasonable suspicion or consent is in line with Officer Brown's and fellow officers demonstrated disregard for citizens rights by arresting people without any reasonable suspicion of criminality and putting handcuffs on too tight in other cases. It has even be argued by Brown herself that her actions are in line with VPD training, "Brown, without denying that she put the handfcuffs on too tight, asserts instead that she put the handcuffs on "in a manner consistent with her POST training and the policies of the Vallejo Police Department. Brown Decl." (quote from Brown

Declaration in case before Allison Claire, United States Magistrate Judge June 29, 2016)

86: Some of VPD officers have even caused serious problems while off-duty in other states, such as Vallejo Police Sargent Michael Kent Tribble and former VPD officer Kevin Coehlo who were both heavily intoxicated when **Vallejo Police Sargent Kent pulled a gun on people outside an Oregon bar** (http://kron4.com/2014/10/01/video-witnesses-say-vallejo-police-officer-pulled-a-gun-during-dispute-at-oregon-bar/)

87: In 2012, "Macario Dagdagan, received the largest police misconduct settlement in California in the past decade based on a 2007 **violation of his 4th amendment rights when an unlawful entry into his home by Vallejo Police resulted in Vallejo Police administering a combative level of excessive force which resulted in serious spinal injuries and immediate paralysis.** Failure to adequately train and supervise VPD officers in respecting constitutionally protected rights as evidenced by a disproportionately high number of civil rights cases being filed against VPD officers, numerous videos and reports of VPD civil rights violations, and that every officer involved in plaintiff's arrest ignored the basic premise that a citizen should be able to continue on their way unless there is an articulated reason to detain them.

**88: Vallejo Law Enforcement officer physically assaulting (for a second time!) an assault victim that had called 911 for help only to have a VPD officer physically assault him and subsequently claim he was guilty of the vague all encompassing charge of 148a1 simply because he complained how long it took for the police to arrive** (http://www.military.com/video/law-enforcement/police/soldier-doesnt-know-cop-is-marine/2152032062001)

89: Failure to properly and fairly investigate complaints of officer misconduct and respond to serious reported crimes in a manner that blames the victim (even **blaming kidnapping victims Aaron Quinn and Denise Huskins for their own kidnapping** (http://abc7.com/news/vallejo-police-stand-by-hoax-comments-in-gone-girl-kidnapping-case/851828/)

**90: Quoting Hicks v. City of Vallejo (No. 2:14-cv-0669 KJM DAD PS), "Plaintiff was unlawfully stopped by defendant Vallejo Police Officers, Sean Kenney and Ted Postolaki without reasonable suspicion of criminal activity or a… traffic violation."**
91: The Vallejo Police Department has rewarded officers which display a predisposition for excessive force with promotions as opposed additional oversight, training or disciplinary actions: **an officer responsible for three shootings in a short time frame received a promotion to Detective** (https://www.buzzfeed.com/albertsamaha/three-shootings-invallejo?utm_term=.mtv8zO5Q4n#.eqRlnQZ8O0)
92: A normal human being wouldn't have done what they've done. Wouldn't have jumped up on the car, wouldn't have used the force that they did," Cynthia Mitchell, Romero's mother said after Vallejo Police shot her son THIRTY ONE TIMES claiming he had a pellet gun. **(http://sanfrancisco.cbslocal.com/2012/09/05/vallejo-officials-defend-police-shootings-community-rallies-for-man-shot)**

**93: Quoting, CREER V. CITY OF VALLEJO (No. 2:14-cv-1428 JAM DAD PS (E.D. Cal. Jun. 16, 2015)** "As plaintiff was moving her car, two marked City of Vallejo Police vehicles pulled into the driveway. "Defendant Vallejo Police Officer[s] Knight Badge #550, Long Badge #661 [and] Martinez #658" got out of their vehicles, drew their weapons and began "repetitively yelling turn

off the fucking vehicle!" (Id.) Plaintiff complied with the officer's demands "as [d]efendants Knight, Long and Martinez continued to point their guns at [plaintiff]." (Id.) **Plaintiff "was detained at gun point for approximately 30 minutes" without "reasonable suspicion or probable cause."** (Id. at 2-3.)"

### 94: GILLAM V. CITY OF VALLEJO (No. 2:14-cv-2217-KJM-KJN PS)

**A 63 year old plaintiff claims** Marvin was standing still "with his hands and arms down in a prone position" when the following is alleged to have occurred, "Officer McCarthy grabbed Marvin's hand and pulled Marvin to the ground. (Pamala Decl. ¶ 8.) After Marvin used "minimal resistance" to stay on his feet, Officer McCarthy struck Marvin in the face with a closed fist. (Id. ¶¶ 9-10.) **McCarthy subsequently tasered Marvin in the chest several times.** (Id. ¶ 11.) In deposition testimony cited by defendants, Marvin conceded that he then tried to grab the Taser, but maintained that he was only attempting to "defend away from the pain" and not trying to attack Officer McCarthy. (SSUF No. 23; Declaration of Kelly Trujillo, ECF No. 34-2, Ex. B ["Marvin Depo."] 25:6-11.) **Thereafter, Officer McCarthy took a flashlight and struck Marvin at least 15-20 times with substantial force all over his body prior to placing Marvin in handcuffs.** (Pamala Decl. ¶ 12.)

### 95: Quoting, SOLIS V. CITY OF VALLEJO (No. 2:14-cv-00483-KJM-KJN), "The claims in this case arise out of an alleged "joint operation involving a probation check" of one Alejandro Guizar ("Mr. Guizar") conducted by the Vallejo Police Department ("VPD") and the Solano County Sheriffs Department. (Compl. ¶¶ 17-18, ECF 1.) Mr. Solis is a 55-year-old man living in the City of Vallejo, California. (Id. ¶ 5.) Mr. Solis resided in a "large [subdivided] home," where Mr. Guizar rented "a unit in the rear of the property." (Id. ¶ 17.) "Mr. Guizar's unit was accessible only by walking to the rear of the property, up a flight of stairs, and through a separate front door . . . . [It] was not accessible through the front entrance of the home, where [Mr. Solis] resided with his family." (Id.)

95a: (On March 12, 2013, at approximately 3:15 p.m., in conducting a probation check on Mr. Guizar, VPD officers and Solano County Sheriff deputies **entered Mr. Solis's home by breaking "down [Mr. Solis's] front door with a battering ram."** (Id. ¶ 20.) They "entered [p]laintiffs home with guns drawn, pointing weapons at [p]laintiffs family members and handcuffing several of the male residents." (Id. ¶ 21.) At the time when the officers and deputies entered plaintiff's home, plaintiff "was sleeping in his bedroom, adjacent to the front door." (Id. ¶ 22.) The officers and deputies "barged through [p]laintiffs bedroom door while pointing guns at [p]laintiff, grabbed [p]laintiff from his bed, and carried him in his underwear into the living room." (Id. ¶ 23.) The officers and deputies "slammed [p]laintiff to the living room floor, causing [p]laintiff to strike his head on the hardwood floor." (Id. ¶ 24.) Then, they handcuffed plaintiff and placed him "in a chair in the living room, along with other members of the household [, where he] remained in his underwear throughout the incident." (Id.)

95b: Subsequently, the officers and deputies "confirmed that the probationer, Mr. Guizar, neither lived in the main home, nor was present in his unit in the rear of the property." (Id. ¶ 25.) Plaintiff avers because "there had been prior probation checks of Mr. Guizar while he resided [in the rear unit,] . . . **the VPD officers and the Sherriff Deputies . . . knew or should have known that Mr. Guizar resided in a rear unit of the property with a separate entrance to the main home."** (Id. ¶ 19.)

95c: "**As a result of the head injury that [plaintiff] sustained, . . . he began going into visible medical distress."** (Id. ¶ 26.) However, **the officers and deputies "were dismissive of plaintiff's clear medical distress, mocking him and accusing him of faking symptoms."** (Id. ¶ 27.) "Eventually, an ambulance was called . . . [and plaintiff] was transported to Kaiser Vallejo, and then to

Kaiser North Valley Sacramento, where he was diagnosed with head trauma." (*Id.* ¶ 28.)
**Plaintiff [in above mentioned case of Solis vs City of Vallejo] remained there "for over a week, where he was treated for a significant brain injury."** (*Id.* ¶ 29.)

96d: On February 14, 2014, Plaintiff filed a complaint against the City of Vallejo, Vallejo Police Chief Joseph Kreins, Vallejo Police Officer Josh Caitham, the County, and Solano County Sheriff Ferrara. (ECF 1.) The complaint alleges ten claims: (1) violation of the Fourth Amendment under 42 U.S.C. § 1983 against individual defendants, including Officer Caitham; (2) supervisory liability under § 1983 against Chief Kreins and Sheriff Ferrara; (3) municipal liability under § 1983 against the City of Vallejo, Chief Kreins, Sheriff Ferrara, and the County; (4) assault against all defendants; (5) battery against all defendants; (6) false arrest and illegal imprisonment against all defendants; (7) intentional infliction of emotional distress against all defendants; (8) negligence against all defendants; (9) trespass against all defendants; and (10) violation of sections 52 and 52.1 of the California Civil Code. (*Id.*)"

97a: There is credible evidence that about a week prior to a VPD officer shooting crime victim Ms. Gregory's dog:
>  a) She had learned that her bank account had been subjected to fraud and wanted to speak "to an officer to provide suspect information...."
>  b) When Officer Calhoun reported to plaintiffs' residence, he was in a police uniform carrying with him, among other things, a Taser, gun, pepper spray, and baton.
>  c) Officer Calhoun claimed to have "realized that [he] was going to be attacked by not one, but two dogs," and he drew his firearm and fired two rounds killing Belle. (Calhoun Dep. 71:15–21, ECF No. 32–1.)
>  d) Alarmed by the gunshots (Gregory Dep. 31:17–25, ECF No. 361), Ms. Gregory came out of the house and saw Belle "lying in a pool of blood" (*id.* 58:9–11).
>  e) It is undisputed that Officer Calhoun was the only eyewitness to the shooting. (ECF No. 44 ¶ 42.)
>  (source: GREGORY V. CITY OF VALLEJO)

97b: When looking at the pattern and practice of Vallejo's Law Enforcement Officer's eagerness to use excessive force for a given situation it is important to look at these and other cases from vantage point of how a reasonable and prudent officer that was adequately trained handle a given situation? In Gregory v. City of Vallejo, why on earth wouldn't a Trained Vallejo Law Enforcement Officer:

> 1) Maintain enough situational awareness that dogs were present on the property before opening the gate?

> 2) **Retreat behind the safety of the gate or use the pepper spray he was carrying if it was truly necessary to defend himself from standard house pets (of note in the record dogs involved were locally known not pose a threat to anyone which decreases the potential veracity of the officer's claim of self defense..)** or

(97b continued) 3) Have a video recording of his encounter to provide clear and compelling justification for killing a crime victim's dog?

98: Quoting, GARDNER V. MCCARTHY (No. 2:12-cv-01613 DAD), "On February 8, 2012 while being arrested for an alleged violation of a restraining order from (address redacted) in Vallejo, I was shot with a taser stun gun **while I was already subdued on the ground handcuffed with my hands behind my back**, by Officer J. McCarthy #627 an employee of the Vallejo Police Department in

the city of Vallejo. I was also punched in my face and received a cut on my lip by Officer J. McCarthy. While subdued on the ground handcuffed with my hands behind my back, Officer Felipe Hernandez #584 an employee of the Vallejo police department put his knee on my face causing lacerations on my left eye and abrasion to my forehead."

99: **Methods appropriate to police a civilian population should take into account an individual's civil rights and not treat every oncoming driver like a potential revenue stream for the City or Local Police Department at best, and a potential enemy combatant at worst**; imposing "Driver's License Checkpoints" demanding all drivers produce their drivers license for inspection at the checkpoint with a complete absence of any legitimate reasonable suspicion of a violation having occurred disproportionately impacts all persons with negative personal experiences with checkpoints that have more similarity to military tactics in a war zone or historical knowledge of how similar current Vallejo Police Department checkpoints are to the Nazi Germany "travel documents" checkpoints of years ago.

100: A failure to adequately train and supervise VPD officers in respecting constitutionally protected rights is evidenced by a disproportionately high number of civil rights cases being filed against VPD officers, numerous videos and reports of VPD civil rights violations, and that every officer involved in plaintiff's arrest ignored the basic premise that a citizen should be able to continue on their way unless there is an articulable reason to detain them.

## TENTH CAUSE OF ACTION
### Monell Claim Against City Of Vallejo For Violation Of Fourteenth Amendment Rights
### (42 U.S.C. §1983)

101: Plaintiff has information and belief that due to more adequate training and accountability of police in Napa Valley that a motorist and his passenger were not unlawfully arrested, (let alone with excessive and potentially lethal force) when they requested their Fourth Amendment rights be respected at an August 22 "Driver's License checkpoint" in Napa which was reported on October 2, 2014 by Kerana Todorov.), in addition to many other cases of individuals simply exercising their constitutionally protected rights in general and at checkpoints where the Officers involved were able to have a civil and mutually respectful conversation without assaulting or arresting anyone.

102: It would be inconceivable that Police Officers with a culture of being so poorly trained, educated, supervised, or disciplined as the Vallejo Police Department would ever be permitted by a city governance to patrol a predominantly affluent white population in California; the quality of police recruiting, training, and subsequent accountability should not deteriorate when a Police Officer is hired to "serve" a predominantly minority population.

103: Plaintiff has information and belief of multiple civil rights violations perpetuated by Vallejo Police Department Officers outlined above including illegal search and seizures, arrests, and excessive uses of force which have even included a statistically shocking number of officer involved shootings and other blatantly callous and indifferent excessive uses of force relative to other police departments with similar population sizes and other matrices sufficient to give an impartial researcher in police use of force the reasonable belief that the City of Vallejo's choice to back up bad cops instead of supporting transparency and accountability within and external to their police force amounts to a deliberate failure to ensure Vallejo citizens receive equal treatment under the law..

104: A practice of escalating instead of deescalating situations, especially the among mentally ill, minorities, and anyone that "dare question their authority" even if it was well within a citizen's

rights to ask clarifying questions to an officer or verbally demand their rights be respected.

   A)  Failure to adequately train police officers to decision making skills as they relate to the decision to detain, arrest, or let a citizen go on their way

   B)  Failure to adequately train police officers in the professionalism required to exercise of self-control and utilize appropriate use of force for a given set of circumstances.

   C)  The arresting charge of 40302(A) CVC did not justify plaintiff being taken to the station since positive ID was obtained already at the checkpoint, and the additional retaliatory charge of 148(a)1 added subsequent to Jodi Brown's unlawful arrest of plaintiff has an absolute *maximum* monetary penalty of $1000 and/or 1 year in county jail *if arrestee was convicted*, but purely based on officer discretion it cost over $1000 simply to have the impounded vehicle returned to him. Also of note, legislative measure AB 353 prohibits impounding an unlicensed drivers vehicle at a checkpoint if only violation was that the driver was unlicensed and they can have a licensed driver take it *and yet in the case currently before the court the plaintiff did in fact possess a valid license* and the Investigative Reporting Program at UC Berkeley with California Watch found that impounds at checkpoints in 2009 generated an estimated $40 million in towing fees and police fines that cities divided with towing firms. Additionally, officers at checkpoints themselves received about $30 million in overtime pay.

## SUMMARY & LEGAL CONSIDERATIONS

105: As a direct and proximate result of Defendants acts and failures to act in both this immediate case, and customs and practices partially outlined above, in direct disregard for citizens' Fourth and Fourteenth Amendment Rights (including equal protection under the law guaranteed due to a clear discrepancy between the quality of law enforcement provided by the City of Vallejo relative to other cities to their citizens) plaintiff suffered:

  a) severe discomfort and pain in jail for ~22 hours,
  b) years of mental duress from the blatant manner in which certain Vallejo Police Officers were allowed to violate plaintiff's individual rights with impunity,
  c) substantial financial harm, and the deprivation of the vehicle he was driving for 4 days which cost plaintiff over $1000 to retrieve from police impound, which exceeded the maximum penalty for the unfounded charges plaintiff was brought to the station for
  d) the intrusion of having his DNA put into a database despite having never been convicted of ANY crime,
  e) and difficulty in international travel due to the implications that the unlawful arrest claim to involving a "concealed dirk or dagger" posses for all countries that would expect the definition of a "dirk or dagger" to require some semblance of similarity to the dictionary definitions of those words instead of criminalizing utility knives, screwdrivers, and even technically a ballpoint pen, especially since it does not require even the slightest hint of *mens rea* as a necessary element.

106: In addition to the compensatory and injunctive relief requested below, it is proper for the court to award punitive damages if they find that the defendant's conduct that harmed the plaintiff in a malicious, oppressive or reckless disregard of the plaintiff's rights.

107: Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring the plaintiff. Officer Jodi Brown and her fellow officers demonstrated spite at plaintiff for verbally exercising his constitutionally protected rights.

108: Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it

reflects complete indifference to the plaintiff's safety or rights, or if the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law. There is no way to ignore that Jodi Brown's own police report acknowledges she demanded plaintiff's Driver's License without any reasonable suspicion of a vehicular violation or criminality of any kind with complete indifference to the 4th Amendment rights the plaintiff requested be respected.

109: An act or omission is oppressive if the defendant injures or damages or otherwise violates the rights of the plaintiff with unnecessary harshness or severity, such as by misusing or abusing authority or power or by taking advantage of some weakness or disability or misfortune of the plaintiff. Officer Jodi Brown misused and abused her legal arrest authority in violation of plaintiff rights, and Officer Doe 1 and 2 acts were unnecessary in both harshness and severity when they threatened to Taser plaintiff without any justification.

110: The grossly negligent omissions of adequate training, departmental policies, and supervision of Vallejo Police officers has resulted in significant civil rights violations to both plaintiff and other people that have been unfortunate enough to cross paths with the Vallejo Police Department.

111: In considering the amount of any punitive damages, the court should consider the degree of reprehensibility of the defendant's conduct, this should include both whether the conduct that harmed the plaintiff was particularly reprehensible *because it also caused actual harm or posed a substantial risk of harm to people who are not parties to this case.*

112: The withholding of exculpatory evidence by Vallejo Police Department officers through their deliberate actions denying the existence of exculpatory evidence, and/or destroying exculpatory evidence and/or the premeditated refusal to record contacts with law-abiding citizens they intend to unlawfully arrest was a violation of plaintiff's 14th amendment due process rights.

113: When a police officer has readily available means to record an interaction with a citizen and refuses to either turn on their recording device, or to release an exculpatory recording to the DA in an effort to have latitude to provide a revisionist history of events to cover up their misconduct and/or justify an illegal arrest their testimony should at the very least receive additional scrutiny for violating a citizen's due process rights.

114: Being wrongly imprisoned for ~22 hours simply because a citizen requested an officer respect their 4th amendment rights is an unacceptable length of time which is inconceivable among Police Departments with a culture of respect and civility towards the citizens they are sworn to protect, and the denial of exculpatory evidence to the plaintiff resulted in criminal charges looming over plaintiff's head for over a year and a half after the initial unlawful arrest had occurred. During this time, in addition to the mental and emotional stress of having an ongoing criminal case against the plaintiff, the ability of the plaintiff to travel into other countries was also severely impacted

**115: A central fact behind this complaint is: Officer Jodi Brown's own police report and plaintiff claims agree with the fact the plaintiff was arrested for the charge of 40302A by Officer Jodi Brown at a Driver's License Checkpoint** operated by the city of Vallejo. Certain facts and merits of this case will inevitably be under debate and need to be determined by this court but it is incontestable and very inconvenient for defendant Officer Jodi Brown and fellow defendants that her very own police report confirms a lack of probable cause or reasonable suspicion of any crime or vehicle violation prior to her making the decision to arrest the plaintiff for 40302A.

116: The charge of 40302A requires an *arrested* person to provide ID; what is clear both in plaintiff allegations and Officer Jodi Brown's own police report is plaintiff was arrested for the charge of "being an arrested person not providing ID." Both the Jodi Brown's Police Report and Plaintiff allegations are in agreement that *the arrest in question was factually for the charge of 40302A, not the*

*charge of 148A1, which was added later since it is broadly worded enough to use in an attempt to justify any unlawful arrest even when the arrest should have clearly never have occurred in the first place.*

 117: As a matter of law, a 40302A CVC clearly requires a preceding justification for arrest since it clearly states, "whenever any person is arrested for any violation of this code, not declared to be a felony, the arrested person shall be taken without any unnecessary delay..." meaning a de facto Fourth Amendment rights violation occurred when Officer Jodi Brown acted under color of law, as her own police report confirms, by arresting him for the initial charge of 40302A CVC.

 118: Why should plaintiff have been arrested for 40302A without being suspected of a preceding nameable crime or vehicular violation? The vague all encompassing catch all charge of 148A1 was added to the charges AFTER Officer Jodi Brown had arrested plaintiff for 40302A; refusing to simply cite and release plaintiff for 40302(A) and 148(a)1 enabled the VPD officers involved to impound plaintiff's rental vehicle without cause in violation of plaintiff's 4th and 14th amendment rights.

 119: Two of **Jodi Brown's fellow officers pointing Taser guns at plaintiff is excessive force based on the surrounding circumstances**.

 120: The 4th amendment legal theory is very simple, "The right of the people to be secure in their persons, h9ouses, papers, and effects, against unreasonable searches and seizures, shall not be violated" and it is unreasonable for the police to arrest persons wishing to continue through a DUI checkpoint without the further unnecessary delay of being forced to provide their Driver's License and potentially other paperwork without any articulable reasonable suspicion of a vehicular violation or criminality of any kind having occurred.

 121: The Fourteenth Amendment rights of the plaintiff were violated because there is a long pattern of the quality of policing the Vallejo community receives being far below what other communities receive both in relation to violation of citizens rights by the Vallejo Police Department (one need only look at previously filed 1983 civil rights cases against the City of Vallejo to recognize the magnitude of this problem..) while the Vallejo Police Department also has demonstrated a refusal to work to protect citizens (from long response times to 911 calls where the caller ends up being assaulted to even blaming the kidnapping victim Denise Huskins for staging her own kidnapping instead of actually investigating a true crime which had occurred) and the Fourteenth Amendment very clearly states, "nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

 122: While correlation is not causation, there has been a pattern of blatantly poor policing within Vallejo city limits as the sheer volume of civil rights complaints against the Vallejo Police Department compared to other police departments indicates "equal protection of the laws" is vastly different, indeed almost absent, within the City of Vallejo than other jurisdictions. Many of these complaints against The City of Vallejo share two common themes:

  A) being arrested by a VPD officer without a genuine articulable reasonable suspicion of a crime having occurred, and

  B) a blatantly excessive degree of force being used by Vallejo Police Officers to effect the arrest.

 123: Without holding law enforcement officers to the same standards across community lines, it is statistically provable that people within certain communities (specifically less affluent communities, and communities with a primarily minority population), whether residents or a passerby, are much more likely to have their rights violated by the police officers with regular conduct unbecoming an officer at best and and assaulting and sometimes killing people at worse which is bordering upon being

a blanket refusal by the City of Vallejo to provide equal protection of the law.

124: **The civility and professionalism of a police force should not depend on what community a citizen happens to be driving through.**

125: Plaintiff alleges that his constitutional rights, privileges, or immunities have been violated as detailed above in this First Amended Complaint and form the basis for the above causes of action and there have been no previously filed lawsuits in state or federal court involving defendant's violation of plaintiff's civil rights in the below causes of action. Claims listed under each cause of action are for document organizational purposes since all claims and resultant causes of action are interconnected.

## JURY DEMANDED

126: PLAINTIFFS DEMAND A JURY TRIAL

## REQUEST FOR RELIEF

127: $13,200.27 in direct out-of-pocket financial expenses arising from unlawful arrest of plaintiff.

128: $1,000,000 in compensatory damages for plaintiff being held ~22 hours subsequent to being falsely arrested, mental anguish and duress, and the impact this false arrest has had on length of time required for Plaintiff to cross through Customs and Immigration when traveling internationally.

129: Injunctive relief protecting plaintiff and fellow United States Citizens from the Vallejo Police Department from incorporating "Driver's License Checkpoints" into "DUI Checkpoints" which is a violation of 4th Amendment in the absence of an articulable reasonable suspicion of a crime or vehicular violation having occurred in the stopped vehicle.

130: Injunctive relief protecting plaintiff and fellow United States Citizens from Due Process rights violations by requiring the Vallejo Police Department to record and disclose all potentially relevant body cam and vehicle recordings as well as relevant Officer Disciplinary Record as determined by impartial 3rd party to all persons arrested in criminal discovery proceedings.

131: Injunctive relief requiring the Vallejo Police Department to return all impound fees charged to plaintiff and fellow drivers whose vehicles were impounded from November 17, 2005 to the date at which the Vallejo Police Department ceases and desists operating "Driver's License Checkpoints" under all circumstances where the driver of an impounded vehicle was not convicted of any criminal offense. Date is based upon US Court of Appeals, Ninth Circuit MIRANDA v. CITY OF CORNELIUS which clarifies permissible impounds under the 4th and 14th Amendment rights.

132: Injunctive relief requiring all Vallejo Police Department officers to receive training in de-escalation tactics and revise its police manual with an element of the Seattle Police Department manual statement, "When safe under the totality of circumstances and time and circumstances permit, officers shall use de-escalation tactics in order to reduce the need for force."

133: Injunctive relief preventing Vallejo Police Department from arresting plaintiff and all other persons for 148a PC since Vallejo Police Department has history of using this charge as justification for unlawful arrests and use of excessive force; this charge is unconstitutionally overbroad and prone to be

regularly misused to justify unlawful arrests.

134: Injunctive relief requiring a thorough Department of Justice investigation into the general culture, operating procedure, civil rights protections, and uses of force within the Vallejo Police Department similar to the investigation which was conducted in Ferguson, Missouri.

135: Moratorium preventing Vallejo Police Department from arresting persons for 21310 PC unless object in question meets Webster's dictionary definitions of a "dirk" or a "dagger" since the current statute incorporates an unconstitutionally overbroad definition of a dirk or dagger which criminalizes wholly innocent conduct of plaintiff and other persons.

136: $2,000,000 in punitive damages to be paid by the City of Vallejo to 10 non-profit organizations of plaintiff's choice to be used primarily on programs within Vallejo which improve racial equality, police accountability, and social, economic and environmental justice.

137: Court fees, lost time, and travel expenses incurred throughout the course of this court case

138: Reasonable legal and expert witness expenses

## CERTIFICATION AND CLOSING

139: Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) iS supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11. I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: March 6, 2017.

Signature of Plaintiff: _____
Printed Name of Plaintiff: David P Demarest